Antwan M. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

No. 04–CM–1089.

District of Columbia Court of Appeals.

Submitted Nov. 22, 2005.

Decided Dec. 15, 2005.

David H. Stringer, filed a brief for appellant.

Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Roy W. McLeese III and Bernard J. Delia, Assistant United States Attorneys, filed a brief for appellee.

Before SCHWELB, REID, and GLICKMAN, Associate Judges.

SCHWELB, Associate Judge:

Following a bench trial, Antwan M. Williams was convicted of assault on Herbert Richey. On appeal, Williams asserts that the evidence was insufficient to support his conviction, but he predicates this claim in substantial part on a contention that the trial judge erroneously analyzed the nature of proof that the prosecution was required to present in order to establish the elements of the offense. In our view, the evidence, when viewed in the light most favorable to the government, *see Rivas v. United States*, 783 A.2d 125, 133–35 (D.C.2001) (en banc), could support Williams' conviction if the trial judge credited the prosecution testimony, disbelieved the defense testimony, and applied the correct legal standard. We conclude, however, that the trial judge appears to have articulated and applied an erroneous legal standard. We are unable to determine what the judge's findings would have been

if she had decided the case on the basis of correct legal principles. Accordingly, we remand the case to the trial court with directions that she make the findings necessary to determine whether the government proved Williams' guilt beyond a reasonable doubt under the principles set forth in this opinion.

## I.

### THE EVIDENCE

On June 24, 2004, Officer Ronald Solomon of the Metropolitan Police Department (MPD) and a second officer arrested Williams on a charge of domestic violence [1] and transported him to the MPD's Sixth District headquarters. At the station, Herbert Richey, a cellblock technician, directed Williams to take off his tennis shoes and remove the shoelaces. Meanwhile, Williams, who was allegedly inebriated, was voicing his displeasure with the officers for arresting him.

Richey, who was the only witness for the prosecution, testified that Williams removed one shoelace and threw it on the floor. Richey directed Williams to remove the second shoelace, but Williams "got loud and boisterous, saying that he didn't have to do that fucking thing." Then, according to Richey, Williams "threw the shoe and hit me in the face, and that's when we restrained him." [2] Richey was asked whether he believed that it was an accident, and he responded: "No, it wasn't." The government rested following Richey's testimony. Williams' attorney made a motion for judgment of acquittal, which the judge denied.

Officer Solomon was called to the stand by the defense. He testified that Williams was intoxicated and upset that Solomon had arrested him. When asked by defense counsel whether he believed that Williams had intended to hit Richey with the shoe, Officer Solomon answered "no," and added:

> But when they wanted him to take his shoestrings out and he—and he said, where here you do it, he tossed it. Here you do it and tossed it. I don't think he meant to hit him in the face with it.

On cross-examination, the officer elaborated:

> [I]n my opinion, the way I'm use[d] to [doing] something intentionally—somebody doing something intentionally against somebody else, he would've looked directly at him—thrown it directly at him. He didn't—Mr. Williams didn't do that.

Williams took the stand in his own defense. Asked whether he threw a shoe at Herbert Richey, Williams stated:

> I mean, I tossed the shoe. I didn't—I didn't throw the shoe to try to—try to do anything to him to cause him any bodily harm or anything like that.

He claimed that he did not even know that the shoe hit Richey, but he stated that the officers pounced on him and jumped on his back, that his head hit the floor, and that his eye was bleeding. On cross-examination, Williams appealed to common sense:

> I guess you can say I was a little agitated but, I mean, for me to try to assault somebody with a—with a tennis shoe, I mean come on now.

He added that "if you ask me did I try to hit him, no I didn't." [3]

---

1. This charge was subsequently dismissed for lack of prosecution.

2. During the "restraint," according to Richey, Williams "cut his eye" and was "bleeding and all of that."

3. Williams was impeached with a conviction

## II.

### THE TRIAL JUDGE'S DECISION

At the conclusion of the trial, the judge found Williams guilty. We quote her decision almost in its entirety:

The government had the burden of proof beyond a reasonable doubt that the defendant committed the crime of assault in violation of D.C.Code 22–504.[4] The government had to prove that the defendant made an attempt or an effort to use force to injure another person and that he had the ability to do so, that it was voluntary not accidental and he wasn't justified.

In this case the court finds that the government has met its burden of proof. The court considered the testimony and credited the testimony of the government's complaining witness in this case, Mr. Richey, when he testified that the defendant was standing against the wall. He asked him to stoop. And initially one shoe came off and that's then the second shoe came off but that that shoe hit the complaining witness. And both Mr. Richey and the defendant testified that they were close proximity approximately about three or four feet based upon the distances that they showed here in court.

The court was persuaded about the general intent element of the crime being met by the fact that the defendant, himself, admitted that he took off the shoe and he tossed it to the side. He had not taken the shoelace out of the second shoe which was the shoe that hit the complaining witness.

The court also took the testimony of Officer Solomon which was consistent with Mr. Richey's testimony that the defendant said, you want to take the shoelace out, you take it out. And that's also the testimony of the defendant that his view was you want the shoelace taken out you take it out. The defendant, by his own testimony, was testifying that he intended to throw the shoe. It is a general intent crime, not a specific intent. He didn't have to have a specific intent to injure Mr. Richey but he had the intent to throw an object that injured the complaining witness. And it was not accidental that he threw the object. He admitted himself he threw the object. That was not any accident. Now, it may have—so the government is correct in that they do not have to prove that there was a specific intent to injure the complaining witness.

## III.

### LEGAL ANALYSIS

We entertain no doubt that if the trial judge believed Richey's testimony that Williams deliberately threw the shoe at him,[5] the evidence was sufficient to establish that Williams committed an assault. The difficulty in the case arises from the judge's failure to make a finding whether Williams intended the shoe to strike Richey, as Richey asserted, or whether Williams had no such intention, as Williams and Officer Solomon testified.

 The District's assault statute, D.C.Code § 22–404(a) (2001), does not identify the elements of the offense. In the absence of a statutory definition, this court has applied the common law of criminal assault. *Mungo v. United States,* 772

---

for criminal contempt.

**4.** Now D.C.Code § 22–404(a) (2001).

.

**5.** The judge stated that she credited some of Richey's testimony, but did not indicate whether she believed those parts of it that were inconsistent with the defense case.

A.2d 240, 245 (D.C.2001). "The essence of the common law offense of assault is the intentional infliction of bodily injury or the creation of fear thereof." *Alfaro v. United States*, 859 A.2d 149, 156 (D.C.2004).

■ In *Robinson v. United States*, 506 A.2d 572 (D.C.1986), we described the nature of the offense in some detail:

There are two distinct kinds of criminal assault. The more common is the "attempted-battery" type, described in the standard instruction [6] and in *Sousa*.[7] The other is the "intent-to-frighten" or "tort" type, which consists of some threatening conduct intended either to injure or to frighten the victim. *See* W. LaFave & A. Scott, Handbook on Criminal Law § 82, at 610–612 (1972). Both varieties are recognized in the District of Columbia. The major difference between them is in the nature of the intent that must be proven. Attempted-battery assault requires proof of an attempt to cause a physical injury, which "may consist of any act tending to such corporal injury, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Patterson v. Pillans*, 43 App. D.C. 505, 506–507 (1915).

*Id.* at 574.[8] Decisions in this jurisdiction have thus reiterated for ninety years or more that in an "attempted-battery" assault case, the prosecution must prove, *inter alia*, "an intention ... of using actual violence against the person." *Patterson*, 43 App. D.C. at 506–07. Indeed, the "*intentional* infliction of bodily injury" is the "essence" of such an assault. *Alfaro*, 859 A.2d at 156 (emphasis added).

To be sure, we have stated that assault is a "general" intent crime, and that the prosecution need not prove that the defendant subjectively intended to inflict injury. *See, e.g., Lee v. United States*, 831 A.2d 378, 380 (D.C.2003).[9] If this proposition were to be read as broadly as the trial judge applied it in this case, however, this would permit the government to prevail in an assault case without proving what we have identified as the essence of the offense. *Alfaro*, 859 A.2d at 156. In other words, the limitation (no *specific* intent to injure required) would swallow up the rule (government must prove intent to use actual violence).

■ In the present case, the trial judge held that if Williams intentionally threw the shoe, then he acted with the requisite general intent. Under the judge's stated view, Williams would be guilty even if he was aiming at the floor, or the wall, or the waste paper basket (or, as she put it, "tossed it to the side"), and accidentally struck the complainant. So long as the throwing was intentional, according to the judge, then it made no difference whether Williams meant to throw it at the complaining witness. The judge thus reasoned that even if one credited the testimony of Officer Solomon and of Williams that

---

6. Criminal Jury Instructions for the District of Columbia [the Redbook], No. 4.11 (3d ed. 1978). The current Redbook instruction as to assault may be found in Criminal Jury Instructions for the District of Columbia No. 4.06 (4th rev. ed. 2004).

7. *Sousa v. United States*, 400 A.2d 1036, 1044 (D.C.), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979).

8. We have also recognized "non-violent sexual touching assault." *See In re A.B.*, 556 A.2d 645, 646 (D.C.1989); Redbook Instruction No. 4.06 C (4th rev. ed. 2004).

9. *But cf.* 2 W. LaFave, Substantive Criminal Law § 16.3(a), at 566 (2d ed. 2003), "[A]ssault of the attempted-battery sort requires an intent to commit a battery; *i.e.*, an intent to cause physical injury to the victim."

Williams did not intend the shoe to strike Richey, Williams was nevertheless guilty of assault. We cannot agree with this position. On the contrary, if the defense version were true, then Williams did not have the intention to use violence against Richey, and the very essence of attempted-battery assault was lacking. *Alfaro*, 859 A.2d at 156; *Robinson*, 506 A.2d at 574; *Patterson*, 43 App. D.C. at 506–07; *accord, McGee v. United States*, 533 A.2d 1268, 1269–70 (D.C.1987).

Accordingly, we must remand the case to the trial court for further proceedings consistent with this opinion. If the government decides to proceed with the case, then the trial judge must determine whether the prosecution proved, beyond a reasonable doubt, that Williams threw the shoe with the intent to hit Richey with it. If the judge finds that the government proved beyond a reasonable doubt that Williams had this intent in throwing the shoe, Williams' conviction and sentence may stand. If the judge cannot find beyond a reasonable doubt that Williams threw the shoe with the requisite intent, then she must find Williams not guilty.

*Remanded.*