Larry DOUGLAS, Appellant,

v.

UNITED STATES, Appellee.

No. 02–CM–314.

District of Columbia Court of Appeals.

Argued Sept. 2, 2004.

Decided Sept. 30, 2004.

Eugene K. Ohm, Public Defender Service, with whom James Klein and Sandra

---

K. Levick, Public Defender Service, were on the brief, for appellant.

Margaret A. Sewell, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Thomas J. Tourish, Jr., and Alexandra F. Foster, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and WASHINGTON, Associate Judges, and NEWMAN, Senior Judge.

GLICKMAN, Associate Judge:

Appellant Larry Douglas was convicted in a bench trial of simple assault and attempted possession of a prohibited weapon. He argues that the trial judge erred in ruling that he did not produce sufficient evidence to furnish the factual predicate for a legally valid claim of self-defense. However, the evidence to which Douglas points was simply his own testimonial account of his confrontation with the complainant, which the judge, in her role as fact-finder, found unworthy of belief. Any error by the judge in appreciating the legal sufficiency of Douglas's testimony was, therefore, harmless, and we hold that Douglas is not entitled to relief.

The altercation that led to the prosecution in this case occurred after Douglas argued with the driver of a bus on which he was riding. According to the bus driver, Douglas walked up to him on the street after they disembarked from the bus, pulled out a knife, and pointed it at him in a threatening manner. According to Douglas, however, the bus driver was the aggressor. Douglas testified that the bus driver saw him walk by, threatened to "kick [his] ass," and then came running toward him. At that point, Douglas claimed, he merely pulled out a closed knife, held it by his side and, from a distance of ten feet, said "You don't want to do that" to the onrushing driver.

■ Arguably, the trial judge did err in ruling as a matter of law that Douglas could not claim to have acted in legitimate self-defense even by his own account. The judge reasoned that Douglas admitted that he employed excessive force when he testified that he wielded a deadly weapon to deter an unarmed attacker. The mere display of a deadly weapon to ward off an attack is not necessarily to be equated to the actual use of deadly force for purposes of evaluating whether the force used was excessive. See McPhaul v. United States, 452 A.2d 371, 373 (D.C.1982) (discussing the different standards for the use of deadly and non-deadly force in self-defense); see also LAFAVE, 2 SUBSTANTIVE CRIMINAL LAW 144–45 (2d ed. 2003) (noting that a threat to use a weapon in self-defense may be justified where actual use of the weapon would not be).

■ The point is entirely academic, however, because the judge did not believe Douglas's account to be true. The judge told defense counsel in no uncertain terms that "the story that your client outlines for me is not credible to me. I don't believe it." Had the judge "instructed herself" correctly on the law of self-defense, as Douglas argues she should have done, her determination as fact-finder that Douglas's account was not credible would have led her to the same conclusion—that Douglas did not act in self-defense. Douglas therefore suffered no prejudice from the judge's putative legal error in evaluating the legal significance of his testimony. While the judge's factual findings are not as clear as we might wish, it is plain enough that she credited the testimony of the complainant that Douglas was the aggressor. The evidence that the judge believed was sufficient to sustain his convictions, and Douglas does not contend otherwise. See, e.g.,

*Mihas v. United States,* 618 A.2d 197, 200–01 (D.C.1992).

The judgment of the trial court is affirmed.

*So Ordered.*

NEWMAN, Senior Judge, concurring in result:

Unlike my two colleagues, I deem it appropriate to determine and say whether or not the trial judge erred in ruling, as a matter of law, that the defendant was not entitled to invoke the defense of self-defense. This being the issue, the trial court was required to view the evidence in its light most favorable to the defendant. *Adams v. United States,* 558 A.2d 348, 349 (D.C.1989). "When a defendant requests an instruction on a theory of the case that negates his guilt of the crime charged, and that instruction is supported by any evidence, however weak, an instruction stating the substance of the defendant's theory must be given." *Gray v. United States,* 549 A.2d 347, 349 (D.C.1988) (citation omitted). The facts, in the light most favorable to the defense, are accurately stated in the defense brief before us.:

On September 21, 2001, Mr. Larry Douglas boarded a Metro bus heading southbound on Georgia Avenue to go to work. He was already a little late and anxious to begin his day. The bus driver, later identified as Mr. Cook, had been driving erratically. The passengers had already been irritated by Mr. Cook's driving—the bus driver had been driving too fast and speeding through yellow lights. As the bus approached Mr. Douglas' destination, the Petworth Metro station bus bays, the bus came to a halt. Within blocks of the Metro stop, the bus driver, Mr. Cook, had inexplicably stopped at the Taylor Street intersection for a few minutes. Mr. Douglas and the other passengers became upset and demanded an explanation. Mr. Cook stated that the bus had arrived too quickly, and the passengers were forced to wait, a mere two stops away from their final destination. Upset, Mr. Douglas shouted from the back of the bus: "Do you have to inconvenience everybody because you were driving like a fool?" Embarrassed and angry, Mr. Cook shouted back from the front of the bus.

Seeing that he had all but arrived, Mr. Douglas asked to exit the bus. The driver refused. The bus then stopped at the Randolph Street intersection. Expressing his displeasure, Mr. Douglas again tried to disembark. This time, the driver relented and Mr. Douglas hurried south towards his workplace, and incidentally, towards the Petworth Metro stop.

Mr. Cook has a large build, weighing 220 pounds at 6 feet and 1 inch. One stop after Mr. Douglas disembarked, Mr. Cook reached the bus bays and also got off the bus to take his break. While doing so, he spotted Mr. Douglas. He freed his hands by giving his belongings to a co-worker to hold and said, "I'm gonna kick that nigger's ass."

With his fists free, he rushed towards Mr. Douglas. Mr. Douglas turned around and saw Mr. Cook running at him. Frightened, threatened and in shock, Mr. Douglas pulled out a folded knife from his pocket. Without even opening the knife, Mr. Douglas warned Mr. Cook, "You don't want to do that man." Mr. Douglas did not point the knife, but rather, held it at his side and kept it closed. Mr. Cook retreated from his aggressive stance. (Transcript references and footnote omitted.)

On the defense version of the facts, albeit contradicted by the government's version, there can be no doubt that the defen-

dant would have been entitled to a self-defense instruction in a jury trial. If the trial judge had refused to give such an instruction and the jury had convicted, there can be no doubt that we would be compelled to reverse that conviction. *Gray, supra,* 549 A.2d at 349 ("failure to give ... (the instruction) is reversible error"). On this record, the trial court could not properly rule, *as it did as a matter of law,* that the defendant's conduct was so unreasonable and excessive as to deprive him of his right to assert a self-defense claim. My Brothers in the majority appear to recognize this, yet they decline to so hold. Unlike them, however, I do not find this issue to be an "arguably" one. Where the error of the trial court is clear on such a fundamental issue as this, particularly where it is a non-jury trial, I think it is incumbent on this court, if we are to perform our duties properly, to say so frankly and explicitly. Since my two colleagues decline to do so, I write separately.

I fully agree that the trial court's subsequent findings of facts in its role as factfinder in this non-jury trial (which bears absolutely no hint of "back-filling the record") renders its legal error harmless beyond any doubt. Thus, I join in affirming the conviction.