*317 Opinion for the court by Associate Judge Easterly.
Opinion by Associate Judge Thompson, concurring in part and dissenting in part, at page 330.
Easterly, Associate Judge:
We return to this case, sitting en banc, to determine what, if anything, the government must prove vis-á-vis a defendant’s mens rea, or state of mind, in order to obtain a conviction for threats (misdemeanor or felony).[1] Our threats statutes do not give us much guidance; neither expressly includes a requisite culpable mental state. And in the wake of this statutory silence, we developed two strands of case law: one indicating that the government had an obligation to prove the defendant “intended” to utter the words as a threat, and the other indicating that it did not. A division of this court considered the split in our precedent and resolved that the latter branch of our case law was binding precedent. See Carrell v. United States, 80 A.3d 163, 170-71 (D.C. 2013). We now hold that the government must prove the defendant’s mens rea to utter the words as a threat, and that it may do so by establishing that the defendant acted with the purpose to threaten or with knowledge that his words would be perceived as a threat.
I. Facts and Procedural History
Lee Charles Carrell was charged with one count of assault and one count of attempted threats; he pled not guilty and received a bench trial. To prove its case, the government relied primarily on the testimony of the complainant, Mr. Carrell’s ex-girlfriend at the time of trial. (On the date of the alleged incident, the two were in the process of ending their relationship but were still living together.) The complainant testified that Mr. Carrell returned home in the early morning hours. They argued. Eventually,- “it just subdued,” and they went to bed in different rooms. The following morning, however, they resumed fighting. The complainant testified that, in the midst of their argument, Mr. Carrell grabbed her, put both of his hands around her neck “with pressure,”[2] and pushed her against the bedroom window. While doing so, Mr. Carrell yelled at her, “I could fucking kill you, I could kill you, I could kill you right now if I wanted to.” The complainant testified that she thought he was going to kill her. After some period of time, perhaps as long as a minute, Mr. Carrell let the complainant go. But after the complainant told Mr. Carrell that he was “sick” and “needed help,” he attacked her again, this time pushing her to the ground, pinning her arms against her sides and putting his hands over her nose and mouth. The complainant testified that, eventually, she was able to get free and called 911.
Mr. Carrell testified in his own defense and disputed the complainant’s account of this incident.[3] He denied being physically violent with the complainant or saying to *318 her, “I could fucking kill you right now if I wanted to.”[4] He testified that the complainant had initiated the argument with him that morning; that when he “refused to pay attention to her,” she grabbed him and kicked him; and that he only engaged with her to get away. He testified that she then accused him of hurting her, threatened him with arrest and the loss of custody of his daughter, and called 911. He had waited for the police to arrive because he “had nothing to hide” and “wanted to tell his side of the story.” On cross-examination, he admitted that he had, during previous arguments with the complainant, thrown and torn pages out of books, pulled a chandelier partially out of the ceiling, and broken a vase, a cabinet door, and the French doors in the apartment.
After instructing herself as to the elements of each offense charged,[5] the trial judge rendered her verdict. The court credited the complainant’s testimony “in its entirety,” discredited Mr. Carrell’s testimony, and found Mr. Carrell guilty of assault and attempted threats. As to the latter charge, the court determined that the government had to prove beyond a reasonable doubt “that Mr. Carrell spoke words or otherwise communicated to the complaining witness words [that] would cause a person reasonably to believe that he or she would be ... harmed[6] if the event occurred” and “that he intended to utter the words which constituted the threat.” The court did not acknowledge any obligation to determine whether Mr. Carrell in fact intended to threaten the complainant,[7] and it noted that his subsequent apology to the complainant was “an indicia that Mr. Carrell reacted under these circumstances understandably frustrated ... that [the complainant] could not control herself orally in terms of her argument and the timing of it.” The court determined that the government had met its burden by proving that Mr. Carrell “utter[ed] words to [the complainant] in his anger,” specifically “I could kill you, I could kill you. I could fucking kill you right now.”
Mr. Carrell challenged his attempted threats conviction on sufficiency grounds, arguing that the trial court “fail[ed] to make a finding as to his intent when he uttered the words which [the trial court] found constituted a crime.” A division of this court acknowledged a split of authority in our case law regarding the government’s obligation to prove a defendant’s “intent” to threaten, but determined that, per M.A.P. v. Ryan, 285 A.2d 310 (D.C. 1971), the line of cases eschewing such a mens rea element was controlling. Carrell, 80 A.3d at 169-70. Over a dissent from Judge Schwelb, id. at 171-77, a division of this court affirmed, id. at 171. Mr. Carrell then filed a petition for en banc review, *319 which the full court granted. Carrell v. United States, No. 12-CM-523, 2015 WL 5725539 (D.C. June 15, 2015) (per curiam order).
II. The Law of Threats
We are confronted with a question of statutory interpretation: How should we read the District of Columbia’s threats statutes, neither of which defines the elements of the crime, much less addresses what, if any, mens rea the government must prove as to each element? The misdemeanor threats statute, D.C. Code § 22-407, dating back to 1912,[8] contains no description of the crime at all; it merely sets the penalty:
Whoever is convicted in the District of threats to do bodily harm shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned not more than 6 months, or both, and, in addition thereto, or in lieu thereof, may be required to give bond to keep the peace for a period not exceeding 1 year.
The felony threats statute, D.C. Code § 22-1810, passed in 1968[9] and patterned on a federal statute, 18 U.S.C. § 875 (c) (1994),[10] is similarly vague about what exactly the government must prove to obtain a conviction. It states:
Whoever threatens within the District of Columbia to kidnap any person or to injure the person of another or physically damage the property of any person or of another person, in whole or in part, shall be fined not more than the amount set forth in § 22-3571.01 or imprisoned not more than 20 years, or both.
The “phrasing” of these statutes is “hardly ideal.”[11] United States v. Baish, 460 A.2d 38, 41 (D.C. 1983). But over the years this court has addressed any vagueness concerns by carving out a defined actus reus, i.e., the act made punishable by this crime.[12] Specifically, we have said that, in *320 order to obtain a conviction, the government must prove a conduct element and a result element[13]: that the defendant (1) “uttered words[14] to another person” (2) with a result that “the ordinary hearer [would] reasonably ... believe that the threatened harm would take place.” In re S.W., 45 A,3d 151, 155 (D.C. 2012); see also Clark (Harold) v. United States, 755 A.2d 1026, 1030 (D.C. 2000) (acknowledging these two actus reus elements); Baish, 460 A.2d at 42 (same); Posted v. United States, 282 A.2d 551, 553 (D.C. 1971) (same).
This leaves the question of the requisite mens rea for the crime of threats— what courts have often, imprecisely, referred to as the question of “intent.” The Supreme Court recently considered in Elanis v. United States, — U.S. —, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015), what proof of mental state the federal threats statute, 18 U.S.C. § 875 (c), requires. Relying on basic principles of statutory construction in the criminal law context, the Court determined that the federal threats statute — also silent on the subject of mens rea — necessitates proof of mens rea with respect to both its conduct and result elements, and endorsed purpose or knowledge for the latter. Elonis, 135 S.Ct. at 2011-12. We hew to the three pillars of the Supreme Court’s reasoning and reach the same conclusion.
First, the Court reaffirmed that “‘mere omission from a criminal enactment of any mention of criminal intent’ should not be read as ‘dispensing with it.’” 135 S.Ct. at 2009 (quoting Morissette v. United States, 342 U.S. 246, 250, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). The Court explained that “[t]his rule of construction reflects the basic principle that wrongdoing must be conscious to be criminal.” Id. (internal quotation marks omitted) (also noting that “the general rule is that a guilty mind is a necessary element in the indictment and proof of every crime” (internal quotation marks omitted)). Thus, we will read mens rea requirements into criminal statutes “even where the statute by its terms does not contain them.” Id. By the same token, because our criminal justice system is premised on a “belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil,” id. (quoting Morissette, 342 U.S. at 250, 72 S.Ct. 240),[15] we require a clear statement from the legislature before we. will conclude that a defendant may be found guilty of a crime without regard to his subjective state of mind. Id. at 2011.
*321 Second, as the Supreme Court explained, “[t]he presumption in favor of a scienter requirement ... applies] to each of the statutory elements that criminalize otherwise innocent conduct.” Elonis, 135 S.Ct. at 2011 (internal quotation marks omitted) (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994)); see also Staples v. United States, 511 U.S. 600, 609, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (“[Different elements of the same offense can require different mental states.”); United States v. Bailey, 444 U.S. 394, 405-06, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (“Clear analysis requires that the question of the kind of culpability required to establish the commission of an offense be faced separately with respect to each material element of the crime.” (brackets omitted)).
Third, in furtherance of the aim to distinguish “wrongful conduct from otherwise innocent conduct,” Elonis, 135 S.Ct. at 2010 (internal quotation marks omitted), the Supreme Court indicated that careful attention should be paid to gradations of mens rea, which it discussed using the hierarchy of culpable mental states set forth in the Model Penal Code (MPC): purpose, knowledge, recklessness, and negligence.[16] The Court explained that, in some eases, “to protect the innocent actor,” courts should infer that the government must prove that the defendant purposely[17] engaged in the prohibited conduct. Elonis, 135 S.Ct. at 2010. But generally, courts should infer that the government must prove at least that a defendant “know[s][18] the facts that make his conduct fit the definition of the offense.”[19] Elonis, 135 S.Ct. at 2009.[20] The *322 Court explained that merely inferring a negligence, i.e., should-have-known, standard [21] is disfavored. Id. at 2011. In short, the Court made clear that, when determining culpability, “what [a defendant] thinks does matter.”[22] Id. (internal quota *323 tion marks omitted).
Applying these principles, the Supreme Court examined the actus reus of the federal crime of threats in its distinct parts— as it defined them, (1) the transmission of a communication, and (2) “the fact that that communication contains a threat”[23]— and determined the mens rea for each. Elonis, 135 S.Ct. at 2011.
As to the conduct element, the Court determined that there was no dispute: a defendant “must know that he is transmitting a communication.” 135 S.Ct. at 2011. Similarly, in Mr. Carrell’s case, there has never been any question that the government must prove that Mr. Carrell “intended” to communicate the words alleged to be a threat, i.e., he knew he was transmitting a communication.[24] But the Supreme Court made clear that criminal liability for threats could not rest solely on this determination: “[CJommunicating something is not what makes the conduct ‘wrongful.’ Here the crucial element separating legal innocence from wrongful conduct is the threatening nature of the communication. The mental state requirement must therefore apply to the fact that the communication contains a threat.” Id. at 2011 (emphasis, citation, and internal quotation marks omitted).
As to the result element of the crime, the Court held that it was not enough to require the government to prove that a reasonable person would understand the communication to contain a threat, because that would amount to a negligence standard and contravene the “conventional requirement” in our criminal justice system that the defendant be aware of his wrongdoing. Elonis, 135 S.Ct. at 2011. Instead, the mens rea requirement “is satisfied if the defendant transmitted] a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat.” Id. at 2012.
Applying the principles of Elonis, we too hold that, in interpreting our threats statute, and in particular the result element of the crime as we have defined it, see supra note 13 and accompanying text, more is required than a showing that a reasonable person would have understood the defendant’s words as a threat or that a defendant should have known that that would be the case.[25]
Following the lead of the Supreme Court, see supra note 16, we likewise conclude that more precise gradations of mens rea should be employed. We have previously expressed concern about the use of *324 “general” and “specific” intent.[26] We reiterate our endorsement of more particularized and standardized categorizations of mens rea, and, in the absence of a statutory scheme setting forth such categorizations,[27] we, like the Supreme Court, look to the Model Penal Code terms and their definitions. See supra notes 17, 18, and 21.
Applying this hierarchy of mens rea levels to the actus reus.result element of the crime of threats, we hold that the government may carry its burden of proof by establishing that the defendant acted with the purpose to threaten or with knowledge that his words would be perceived as a threat. Elonis, 135 S.Ct. at 2012. Like the Supreme Court, however, we decline to decide' whether a lesser threshold mens rea for the second element of the crime of threats — recklessness—would'suffice.
We defer resolution of this issue for multiple reasons, among them: (1) post-Elonis, the majority of federal courts confronting this question have taken their cue from the Supreme Court and have declined to reach it;[28] (2)'given that we adhere to *325 the reasoning of Elonis, and that the same legislature (Congress) enacted the federal threats statute and our threats statutes, we hesitate at this juncture to adopt a mens rea for our threats crimes that may turn out to conflict with what the Supreme Court or the majority of federal courts ultimately adopt; (3) we prefer to make a more informed judgment on the question whether recklessness suffices in the context of a factual situation that concretely presents the issue; and (4) we have no need to reach the question in this case, because, while the parties before us disagree in the abstract, the prosecuting agency, the United States Attorney’s Office, disclaims reliance on recklessness, discounts the need to resolve the question as a general matter, and states that it does not intend to prosecute future threats cases on a recklessness theory.[29]
Thus, we leave for another day whether a defendant can be found guilty of the crime of threats based on a showing that he recklessly uttered words as a threat. For now, we decide only that, to obtain a conviction for threats, the government may carry its burden of proof by establishing that the defendant acted with the purpose to threaten or with knowledge that his words would be perceived as a threat.
III. Standard of Review and Appropriate Remedy
We turn now to the appropriate disposition of Mr.. Carrell’s case. Echoing the analysis of the division, the government argues that, even if we hold that the mens rea for the result element- of threats is satisfied by proof of purpose or knowledge, as we have done, Mr. Carrell is entitled to no relief,. because he did, not preserve a challenge to.the trial court’s verdict on this basis, and- he cannot satisfy the test for plain error.. We conclude that, at his bench trial, Mr. Carrell adequately preserved his challenge to. the sufficiency of the evidence- — which encompassed his mens rea claim — and the test for plain error has no application to this case.[30]
In his initial brief to a division of this court, Mr. Carrell argued that the evi *326 dence was insufficient to sustain his conviction, because the trial court — the fact-finder — was obligated to find that he had uttered the alleged threatening words as a threat; the trial court did not so find; and the evidence did not support such a finding. The division rejected his claim on the merits, and then added that, because Mr. Carrell had made no request for special findings of fact under Super. Ct. Crim. R. 23 (c), “his claim of error here is subject to plain error review at best.” Carrell, 80 A.3d at 171. But Mr. Carrell’s appellate claim before the division did not pertain to the accuracy or validity of the trial court’s factual findings; indeed, he never cited Rule 23 and he expressly stated that the factual findings the trial court made were not in dispute. Instead, his claim was that the evidence was insufficient to sustain his conviction because he did not have the requisite mens rea to threaten the complainant — a claim which was predicated on his argument that a showing of such mens rea was required. See Carrell, 80 A.3d at 177 n.7 (Schwelb, J., dissenting) (observing Mr. Carrell’s “basic contention [wa]s that the judge applied the wrong legal standard” in assessing Mr. Carrell’s guilt).
As we explained in Newby v. United States, 797 A.2d 1233 (D.C. 2002), it is well settled in this jurisdiction that a “full range of challenges” to the sufficiency of the evidence are automatically preserved at a bench trial by a defendant’s plea of not guilty. Id. at 1237-38 & n.2 (observing that, “in a non-jury proceeding ... sufficiency challenges may be preserved whether or not the defense raises them at trial”). Moreover, such sufficiency challenges encompass challenges to the requisite elements of the crime. See, e.g., Sutton v. United States, 988 A.2d 478, 482 (D.C. 2010) (“This court ... reviews de novo the elements of the crime which the prosecution must prove and against which sufficiency of the evidence is assessed.”). Thus, in Newby, as here, the defendant argued on appeal that the trial court failed to find that she acted with the mens rea necessary to sustain a conviction (malice) and that the record evidence was insufficient to support such a determination; she had not made this claim in the trial court. 797 A.2d at 1237. Nevertheless, we concluded that her argument was preserved for our review, because it was “in reality a challenge to the sufficiency of the evidence to sustain her conviction.” Id. At his bench trial, Mr. Carrell not only pled not guilty but also made a general motion for a judgment of acquittal challenging the sufficiency of the government’s evidence. Thus, Mr. Carrell’s claim that the trial court was obligated to find that he acted with purpose or knowledge is preserved as part of his repeated challenge to the sufficiency of the evidence to sustain his conviction for attempted threats.
We turn then to the sufficiency question. As explained above, under our law of threats, Mr. Carrell could not have been found guilty based on a showing of mere negligence, but he could have been found guilty if the government proved that he had the purpose to threaten the complainant or that he knew his words would be perceived as a threat. Thus, we consider whether, “[viewing the evidence in the light most favorable to the government,” Ortberg v. United States, 81 A.3d 303, 309 (D.C. 2013), a reasonable factfinder could have determined that the government proved Mr. Carrell’s purpose or knowledge beyond a reasonable doubt. See Rivas v. United States, 783 A.2d 125, 133-34 (D.C. 2001) (en banc). Mr. Carrell’s briefing is silent on this point; he directs us to no record evidence that would have precluded such a finding. We conclude that a reasonable factfinder could have determined that he acted with a mens rea adequate to *327 support his conviction of attempted threats.
But our analysis does not end here. The fact remains that the trial court did not apply the law as we have outlined it above.[31] Specifically, the court only assessed Mr. Carrell’s mens rea as to the conduct element for attempted threats and determined that Mr. Carrell had “intended to utter the words which constituted the threat.” The trial court did not determine that Mr. Carrell spoke these words to the complainant with knowledge or purpose that they would be understood as a threat.
Mr. Carrell requests that, to remedy the trial court’s legal error, we remand the case to the trial court to apply the law of threats as we have outlined in this opinion and issue a verdict thereunder. The government counters that no remand is necessary. Citing Neder v. United States, 527 U.S. 1, 4, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), and Wilson-Bey v. United States, 903 A.2d 818, 843 (D.C. 2006) (en banc), the government argues (in the alternative to its plain error argument) that we must assess whether the trial court’s error was harmless under the Chapman standard,[32] just as we would when a jury has been misinstructed as to the elements of a crime.[33] The government further argues that the trial court’s failure to consider whether Mr. Carrell acted with knowledge or purpose was harmless. We agree that we must assess whether the trial court’s error was harmless under Chapman. D.C. Code § 11-721 (e) (2012 Repl.) (“On the hearing of any appeal in any case, the District of Columbia Court of Appeals shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.”); see also United States v. Argueta-Rosales, 819 F.3d 1149, 1156 (9th Cir. 2016) (“When a district court in a bench trial has made a legal error regarding the elements of an offense, the error is reviewed using the same harmless error standard that would apply to an erroneous jury instruction,” i.e., the Chapman standard.);[34] United States v. Sheehan, 512 F.3d 621, 631 (D.C. Cir. 2008) (determining that the trial court made the legal error of “eliminat[ing] the prosecutor’s burden of proving mens rea,” and applying the Chapman standard for harmless error); Douglas v. United States, 859 A.2d 641, 642 (D.C. 2004) (effectively applying Chapman harmless error where the trial court “arguably” erred in determining that the defendant had failed to make out a prima facie case of self-defense but then made the same credibility findings it would have made had the court properly placed the burden to disprove *328 self-defense on the government). But we disagree that the error in this case was harmless.
Under Chapman, an error is considered harmless if the government can “show beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); see also Wilson-Bey, 903 A.2d at 844 (en banc). “[T]he question ... is not what effect the constitutional error might generally be expected to have upon a reasonable [factfinder], but rather what effect it had upon the guilty verdict in the case at hand.” Sullivan, 508 U.S. at 279, 113 S.Ct. 2078 (emphasis added). It is thus beside the point that we have already concluded that the evidence was legally sufficient;[35] the pertinent question is whether we can say, beyond a reasonable doubt, that the trial court would have issued a guilty verdict in this case based on a determination that Mr. Carrell acted with purpose or knowledge when he threatened the complainant. On this record, we cannot.
As a benchmark, we look to Douglas, 859 A.2d 641, the only published case we are aware of where we have upheld a conviction notwithstanding a trial court’s “arguable]” error in defining the government’s burden of proof. Id. at 642. We explained in Douglas that the trial court’s failure to require the government to disprove the defendant’s claim of self-defense was “entirely academic,” because the trial court did not credit the only evidence proffered in support of that claim. Id. Thus, even if the trial judge had “‘instructed herself correctly on the law of self-defense ... her determination as fact-finder that [defendant’s] account was not credible would have led her to the same conclusion — that [defendant] did not act in self-defense. [Defendant] therefore suffered no prejudice from the judge’s putative legal error ....” Id. Put another way, we were able to conclude that the trial court’s error in Douglas, if any, was harmless beyond a reasonable doubt, because the trial court made the same finding in support of guilt it would have made had it correctly applied the law.
In contrast to Douglas, we concluded in Williams (Shirley) v. United States, 90 A.3d 1124 (D.C. 2014), and Ewell v. United States, 72 A.3d 127 (D.C. 2013), that the trial court’s legal error in identifying what the government had to prove was not harmless, because the trial court did not make the findings it would have made if it had applied the correct legal standard in the first instance. See Williams (Shirley), 90 A.3d at 1128-29 (“Douglas is the antithesis of the case before us now. Here, the judge did not make any credibility determinations or factual findings .... We cannot thus dispose of the issue in the way we did in Douglas by deferring to a specific factual finding [of the trial court].”); Ewell, 72 A.3d at 131-32 (After concluding that “the trial court applied the incorrect legal standard,” the court held that the trial court failed to make the factual findings necessary for the appellate court “to apply the proper standard ... to this record” and to find the error harmless.). And we explained in Williams (Shirley) that “[i]n [such] a situation^] where the trial court did not make the findings of fact *329 necessary to support an adjudication!;,] our usual course [is] to return the case to the trial court to make adequate findings of fact.”[36] 90 A.3d at 1129; see also Ewell, 72 A.3d at 131-32 (same). Reflecting, this practice, we have a number of published decisions in which, albeit without an express discussion of harmless error, we have remanded the case after determining that the trial court applied an incorrect legal standard and failed to make the necessary factual findings required under the correct standard.[37] The bottom line is that “[a]s an appellate court, we do not make findings of fact and therefore may not rule on our own reading of the evidence unaided by the trial court’s findings...." Lihlakha v. United States, 89 A.3d 479, 490 (D.C. 2014).[38]
In Mr. Carrell’s case, the trial court did not incidentally make a finding, necessary *330 under the correct legal standard as we have articulated it here, that Mr. Carrell had the purpose or knowledge that his words would be received as a threat. To the extent it alluded to his mens rea at all, the court noted that “that Mr. Carrell reacted under these circumstances understandably frustrated” and that Mr. Carrell had “utter[ed] words to [the complainant] in his anger.” Although the evidence is sufficient to sustain a finding of purpose or knowledge, the trial court did not — and, when confronted with this mens rea question, perhaps will not — make such a determination. Accordingly, we remand the case to allow the trial court to make the necessary mens rea finding, based on the law as set forth in this opinion, to determine if Mr. Carrell is guilty of the crime of attempted threats.

So ordered.

. D.C. Code § 22-407 (2001) (misdemeanor threats); D.C. Code § 22-1810 (2001) (felony threats). The elements of these offenses are nearly identical, In re S.W., 45 A.3d 151, 155 n.9 (D.C. 2012); see also infra, note 6; the only difference is in the penalty.

. The complainant demonstrated to the court that Mr. Carrell “was choking [her] with both hands — the thumbs on the front overlapped part of the neck.”

. Before he took the stand, Mr. Carrell unsuccessfully moved for a judgment of acquittal (MJOA) “on the record” at the close of the government’s evidence. Mr. Carrell renewed his MJOA at the close of the defense case and prior to closing arguments.

. Mr. Carrell admitted "blurt[ing] out in anger” that he hated the complainant and wished she were dead. But he denied he had "an intention” in making that statement and asserted that he was simply "very upset.”

. We commend the trial court on taking this deliberate step. A review of the pertinent elements on the record not only promotes the trial court’s careful review of the evidence but also facilitates this court’s review on appeal.

. The trial court said "seriously harmed,” but as we recently held in Lewis v. United States, 138 A.3d 1188 (D.C. 2016), "the crime of misdemeanor threats does not require proof that a defendant threatened 'serious bodily harm,’ as opposed to ‘bodily harm.’” Id. at 1194.

. The government, however, had argued in closing that Mr. Carrell "had the intent to threaten” the complainant. The defense in response argued not only that he had not said the words the government attributed to him, but also that what he did say — "I wish you were dead” — manifested only that he was "totally and royally sick of [the complainant].”

. Act of July 16, 1912, Pub. L. No. 62-226, ch. 235, § 2, 37 Stat. 192, 193.

. Act of June 19, 1968, Pub. L. No. 90-351, tit. X, § 1502, 82 Stat. 197, 238-39.

. See Ruffin v. United States, 76 A.3d 845, 855 n.14 (D.C. 2013) (citing Holt v. United States, 565 A.2d 970, 973-74 (D.C. 1989) (en banc)).

. "[I]n our free society,” it is critical "that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty.” In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). ”[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," id. (emphasis added), which means that crimes must be defined with sufficient precision to allow determination of which facts are necessary, see United States v. Williams (Michael), 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008) (observing that due process is violated if an individual is convicted under a statute that “fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement”).

.Ordinarily, this court looks to the legislature to set forth the basic actus reus elements it wishes to criminalize. Staples v. United States, 511 U.S. 600, 604, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) ("[T]he definition of the elements of a criminal offense is entrusted to the legislature ....”). An exception is made when the legislature codifies common law crimes. See Carter v. United States, 530 U.S. 255, 267 n.5, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (noting that "Congress could have simply punished ‘robbery’ or larceny’ as some States have done ... thereby leaving the definition of these terms to the common law”); see also Sekhar v. United States, — U.S. -, 133 S.Ct. 2720, 2724, 186 L.Ed.2d 794 (2013) (“It is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses.” (internal *320 quotation marks omitted)); Williams (Antwan) v, United States, 887 A.2d 1000, 1002-04 (D.C. 2005) (importing the elements of common law assault to interpret D.C. Code § 22-404 (a)). Notwithstanding our statement to the contrary in Postell v. United States, 282 A.2d 551, 553 (D.C. 1971), both the United States Attorney’s Office and the Public Defender Service assert criminal threats was a common law crime, and no one has argued that we are without authority to define the elements of our threats statutes.

.We adopt these classifications from the Model Penal Code § 1.13 (9) (Am. Law Inst., Proposed Official Draft 1962) (classifying elements as "conduct," "circumstances,” or "results”); see also Jones (Richard) v. United States, 124 A.3d 127, 130 n.3 (D.C. 2015) (referring to "material element[s]” as "conduct, resulting harm, [and] ... attendant circumstance[s]”).

. This includes written threats. Tolentino v. United States, 636 A.2d 433, 434-35 (D.C. 1994).

. See also Liparota v. United States, 471 U.S. 419, 425, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985); United States v. U.S. Gypsum Co., 438 U.S. 422, 436, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).

. Model Penal Code § 2,02 (2)(a)-(d) (Am. Law Inst., Proposed Official Draft 1962) (defining these terms). Before Elonis, the Supreme Court endorsed the MPC taxonomy for mens rea in Bailey, 444 U.S. at 403-04, 100 S.Ct. 624, and U.S. Gypsum Co., 438 U.S. at 443-44, 98 S.Ct. 2864. See also Voisine v. United States, — U.S. —, 136 S.Ct. 2272, 2278, 195 L.Ed.2d 736 (2016) (utilizing the MPC definitions of purpose, knowledge, and recklessness to interpret a federal statute). And the Court has repeatedly signaled that looser categorizations of "general” and “specific” intent, used by Justice Thomas in his dissent in Elonis, 135 S.Ct. at 2018-24, are inadequate. See, e.g., Liparota, 471 U.S. at 423 n.5, 105 S.Ct. 2084 ("[T]he mental element in criminal law encompasses more than the two possibilities of ‘specific’ and 'general' intent.”); id. at 433, 105 S.Ct. 2084 n.16 (suggesting that, on remand, the jury instruction utilize the MPC mental states "and eschew use of difficult legal concepts like ‘specific intent’ and ‘general intent’"); Bailey, 444 U.S. at 403, 100 S.Ct. 624 ("At common law, crimes generally were classified as requiring either ‘general intent’ or ‘specific intent.’ This venerable distinction, however, has been the source of a good deal of confusion.”).

. Model Penal Code § 2.02 (2)(a) ("A person acts purposely with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.”).

. Model Penal Code § 2.02 (2)(b) ("A person acts knowingly with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result,”).

. This is so "even if he does not know that those facts give rise to a crime.” Elonis, 135 S.Ct. at 2009. Knowledge that one is violating a criminal statute is not required; ignorance of the law is not a defense. Id.

. For this proposition, the Court cited Morissette, 342 U.S. at 271, 72 S.Ct. 240 (requiring proof of knowledge that shell casings belonged to someone else to obtain conviction for conversion); Liparota, 471 U.S. at 425-27, *322 433, 105 S.Ct. 2084 (requiring proof of knowledge of facts that made possession or use of food stamps unauthorized to obtain conviction for unauthorized possession or use of food stamps); Posters 'N’ Things, Ltd. v. United States, 511 U.S. 513, 524, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994) (requiring proof of knowledge that certain items were likely to be used with illegal drugs to obtain conviction for possession of drug paraphernalia); Staples, 511 U.S. at 605, 114 S.Ct. 1793 (defining "a conventional mens rea element” as one "which would require that the defendant know the facts that make his conduct illegal” (second emphasis added)); X-Citement Video, 513 U.S. at 73, 115 S.Ct. 464 (requiring proof of knowledge of the age of performers in sexually explicit material to sustain conviction for receiving, distributing, or reproducing child pornography); and Carter, 530 U.S. at 268, 120 S.Ct. 2159 (explaining that "the presumption in favor of scienter demands only that we read [the statute in question] as requiring proof ... that the defendant possessed knowledge with respect to the actus reus of the crime” (emphasis omitted)).
Other supporting authority abounds in the Court’s precedent. See, e.g., Bailey, 444 U.S. at 408, 100 S.Ct. 624 (explaining that the default mens rea for statutes that are silent or ambiguous is “generally ... proof that the defendant acted knowingly,” with the exception of public welfare offenses); U.S. Gypsum Co., 438 U.S. at 445, 98 S.Ct. 2864. In U.S. Gypsum Co., the Court specifically noted that "[t]he element of intent in the criminal law has traditionally been viewed as a bifurcated concept embracing either the specific requirement of purpose or the more general one of knowledge or awareness.” 438 U.S. at 445, 98 S.Ct. 2864. "[A] person who acts (or omits to act) intends a result of his act (or omission) under two quite different circumstances: (1) when he consciously desires that result ... and (2) when he knows that the result is practically certain to follow from his conduct ...."Id.

. Model Penal Code § 2.02 (2)(d) ("A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor’s failure to perceive it, considering the nature and purpose of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor’s situation.”).

. The Court additionally observed that the judiciary’s job is to "read into [a] statute only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct.” Elonis, 135 S.Ct. at 2010 (internal quotation marks omitted) (quoting Carter, 530 U.S. at 269, 120 S.Ct. 2159). It is not entirely clear what the Court meant by this, but, read in the context of Carter, it appears the Court was distinguishing between "general intent” and "specific intent,” see Carter, 530 U.S. at 267-69, 120 S.Ct. 2159, which the Court had previously likened to "knowledge” and "purpose,” respectively, Bailey, 444 U.S. at 405, 100 S.Ct. 624 ("In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent”). Cf. Voisine, 136 S.Ct. at 2281 (explaining that "[rjecldessness was not a word in the common law’s standard lexicon, nor an idea in its conceptual framework"). Thus it does not appear that the Court was suggesting that a reviewing court must only read into the statute the minimum mens rea it deems plausible (and, as discussed below, the Supreme Court did not in fact do this in Elonis, see infra p. 17). Moreover, such an exercise of statutory interpretation would seem to be in tension with the rule of lenity, under which we adopt the less harsh interpretation of an otherwise ambiguous statute and leave it to the legislature to clarify statutory terms if it wishes harsher or broader application. See Carrell, 80 A.3d at 176-77 (Schwelb, J., dissenting) ("[T]he rule of lenity requires ambiguous criminal [statutes] to be interpreted in favor of the defendants subjected to them.” (quoting United States v. Santos, 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008))); see also Ruffin, 76 A.3d at 858 (discussing the District's felony threats statute *323 and observing that "the rule of lenity requires that, when a choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite”).

. These actus reus elements align with the conduct and result elements, respectively, in the District's threats statutes. See supra note 13 and accompanying text. The federal statute contains additional elements not at issue in Elonis. See 18 U.S.C. § 875 (c).

. The government must also prove that the defendant’s communication was voluntary, a requirement subsumed in the requirement to prove "that the [appellant] intended to utter the words which constituted the threat,” Kaliku v. United States, 994 A.2d 765, 788 (D.C. 2010) (internal quotation marks omitted). See Conley v. United States, 79 A.3d 270, 279 (D.C. 2013) ("No one, of course, can be held criminally liable ‘for failing to do an act that he is physically incapable of performing.’ ” (citing Model Penal Code § 2.01 (1) (Am. Law Inst., Proposed Official Draft 1962) ("A person is not guilty of an offense unless his liability is based on conduct that includes a voluntary act or the omission to perform an act of which he is physically capable.”)).

.The government has conceded this much.

. See Jones (Richard), 124 A.3d at 130 n.3 (citing Perry v. United States, 36 A.3d 799, 809 n.18 (D.C. 2011)) ("Ideally, instead of describing a crime as a 'general intent’ or ‘specific intent’ crime, courts and legislatures would simply make clear what mental state (for example, strict liability, negligence, reckless- • ness, knowledge, or purpose) is required for whatever material element is at issue (for example, conduct, resulting harm, or an attendant circumstance ...).”).

. A number of , states have statutorily adopted the MFC hierarchy of mens rea terms. See Ala. Code § 13A-2-2 (2017); Alaska Stat. § 11,81.900 (2016); Ariz. Rev. Stat. Ann. § 13 — 105 (10) (2017); Ark. Code Ann. § 5-2-202 (2016); Colo. Rev. Stat. § 18-1-501 (2016); Conn. Gen. Stat. § 53a-3 (11)-(14) (2016); Del. Code Ann. tit. 11, § 231 (2017); Haw. Rev. Stat. Ann. § 702-206 (LexisNexis 2017); 720 Ill. Comp. Stat, S/4-3-5/4-, 7 (West 2016); Ind. Code Ann. § 35-41-2-2 (West 2016); Kan. Stat. Ann. § 21-5202 (West 2017) (codifying purpose, knowledge, arid recklessness, but not negligence); Me. Stat. tit. 17-A, § 35 (2017); Mo. Ann. Stat. § 562.016 (West 2016); N.H. Rev. Stat. Ann. § 626:2 (2017); N.Y. Penal Law § 15.05 (McKinney 2017); N.D. Cent. Code § 12.1-02-02 (2017); Ohio Rev. Code Ann. § 2901.22 (LexisNexis 2017); Or, Rev. Stat. Ann. § 161.085 (West 2017); 18 Pa. Stat. and Cons. Stat. Ann. § 302 (West 2016); S.D. Codified Laws § 22-1-2 (2017); Tenn. Code Ann. § 39-11-302 (2016); Tex. Penal Code Ann. ’§ 6.03 (West 2015); Utah Code Ann. § 76-2-103 (LexisNexis 2016); .Wash. Rev. Code Ann. § 9A.08.010 (West 2016).

. Since Elonis, four federal appellate courts appear to have endorsed knowledge as the minimum acceptable mens rea for the federal threats statute through omission of any reference to recklessness. See United States v. Dutcher, 851 F.3d 757, 761 (7th Cir. 2017) (interpreting Elonis to require "that the speaker must know that his communication contains a threat” to be. found guilty under 18 U.S.C. § 875 (c)); United States v, LaFontaine, 847 F.3d 974, 979-80 (8th Cir. 2017) (citing Elonis for the proposition that "the government had to prove that [the defendant] ... at least knew that the communication would be viewed as threatening”); United States v. Davis, 687 Fed.Appx. 534, 535, 2017 WL 1364283, at *2 (9th Cir. 2017) (interpreting Elonis to conclude that, "with respect to the federal threats statute, a defendant must know that the transmitted communication contains a threat”); United States v. Jordan, 678 Fed.Appx. 759, 772-73 n.13 (10th Cir. 2017) (noting that “[t]he Supreme Court recently addressed whether 18 U.S.C. § 875 (c) ... requires a mens rea” and describing the holding as "requiring] that ‘the- defendant transmit [ ] a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat’ ” (emphasis added) (quoting Elonis, 135 S.Ct. at 2012)).
The remaining federal appellate courts that have decided threats cases post-Elonis have followed in the Supreme Court’s footsteps and have avoided deciding whether recklessness is sufficient. See United States v. Choudhry, 649 Fed.Appx, 60, 62-63 (2d Cir. 2016) (affirming conviction where evidence was sufficient to convict the appellant under a purpose or knowledge standard, either of which "satisfiefc]” the "mental state requirement”); *325 United States v. Elonis, 841 F.3d 589, 597 (3d Cir. 2016) (noting, on remand from the Sur preme Court, that the Court declined to address recklessness); United States v. White, 810 F.3d 212, 220-21 (4th Cir. 2016) (acknowledging that whether recklessness is sufficient to satisfy the mens rea requirement is unresolved); United States v. Houston, 792 F.3d 663, 669 (6th Cir. 2015) ("takfing] the same route” as the Supreme Court and declining to address the issue of recklessness); United States v. Martinez, 800 F.3d 1293, 1294 (11th Cir. 2015) (dismissing an indictment for failure to allege an essential element, namely that the defendant "subjectively intended to convey a threat to injure others”); United States v. Sherbow, No. 14-3088, 2016 WL 1272907, at *1 (D.C. Cir. Feb. 12, 2016) (per curiam) (reversing conviction and remanding for further proceedings "consistent with” El-onis, without stating the applicable standard).

. The Public Defender Service (PDS), as amicus, notes that the District also prosecutes threats crimes. The District, however, did not join the United States' brief or file an amicus brief in this case to state a distinct position on the issues presented. .

. We note that the government did not .contend that Mr. Carrell's mens rea argument was unpreserved and subject to plain error in its briefing to the division. Rather, after addressing his sufficiency claim, the government argued that, "to the extent that” Mr. Carrell was making a separate argument that "the trial court erred in failing to make ... explicit finding[s]” under Rule 23 (c), his claim was unpreserved. We thus could conclude that the government waivéd its preservation challenge as to Mr. Carrell’s sufficiency claim, see Wilson-Bey v. United States, 903 A.2d 818, 827 (D.C. 2006) (en banc) (acknowledging the government can waive the application of plain error review, i.e., “waive the waiver”), but in order to clarify our law regarding preservation, we opt to address the preservation issue directly.

. We do not fault the trial court. As explained above, this court developed two conflicting lines of authority regarding the elements of threats. See supra p. 317.

. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (setting forth the harmless error analysis for constitutional errors).

. In either case, the defendant’s constitutional rights are compromised. When a trial court decides guilt under an incorrect legal framework, any reduction of the government’s burden of proof compromises the defendant's right under the Due Process Clauses of the Fifth and Fourteenth Amendments to have the government prove all the elements of the offense beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). When the jury is mi-sinstructed "on an element of the offense,” the defendant’s "Sixth Amendment] jury trial guarantee” is violated. Neder, 527 U.S. at 12, 119 S.Ct. 1827.

. We apply the same harmless error standards as the federal courts. Compare D.C. Code § 11-721 (e), with 28 U.S.C.A. § 2111 (West 2017); see also Randolph v. United States, 882 A.2d 210, 222 & n.17 (D.C. 2005).

. Quantifying the effect on the verdict is distinct from an assessment that the evidence was legally sufficient. In re Ty.B., 878 A.2d 1255, 1266-67 (D.C. 2005) (''[T]he sufficiency issue is distinct from that of harmless error.”); see also Bell v. United States, 801 A.2d 117, 129 (D.C. 2002) ("Mere sufficiency of the evidence ... does not dictate a finding of harmless error.”); Fox v. United States, 421 A.2d 9, 14 (D.C. 1980) (finding the evidence “sufficient to permit a guilty verdict ... [but] not, however, ... so strong as to justify a conclusion that the erro[r] ... was harmless”).

. We did not follow this "usual practice" in Williams (Shirley), however, because we determined that the evidence in the case was legally insufficient to support a finding of guilt. 90 A.3d at 1129. We have also declined to remand and have instead reversed a conviction outright in cases where a trial court erred in identifying what the government must prove but then incidentally made findings of fact thatprecluded guilt as á matter of law. See Cave v. United States, 75 A.3d 145, 147 (D.C. 2013); cf. Clark (Rayshawn) v. United States, 147 A.3d 318, 328 n.14 (D.C. 2016) (explaining that, upon reviewing bench trials, "we can review the sufficiency of th[e trial court’s] findings" and "reverse outright if the trial court made a factual finding that cannot satisfy an element of the crime”).

. See, e.g., Warner v. United States, 124 A.3d 79, 88-89 (D.C. 2015) (remanding the case to the trial court because "even if the evidence may be sufficient to sustain appellant’s conviction, it does not compel it” (brackets and internal quotation marks omitted)); Buchanan v. United States, 32 A.3d 990, 991 (D.C. 2011) (per curiam) (remanding the case for the trial court to "clarify the [mens rea that the court had] found exhibited by appellant’s actions” and to reassess the defendant’s guilt in light of that clarification); Jones (Andre) v. United States, 16 A.3d 966, 971-72 (D.C. 2011) (remanding the case in light of “the absence of an explicit credibility determination and specific factual findings ... regarding the basis of [the trial court’s] guilty verdict”); Howard v. United States, 966 A.2d 854, 857 (D.C. 2009) (remanding the case where "the trial court did not make, any credibility determinations or factual findings to resolve” .conflicting testimony, because, unlike “a jury trial ending with a general verdict, [in which] we would have been able to affirm based on the evidence," in a bench trial “we must remand so that the trial court' may determine whether to convict based on a more comprehensive view of the evidence’’); Williams (Antwan), 887 A.2d at 1000-01 (remanding the case, even though the evidence was sufficient to' sustain a conviction, because the court was "unable to determine what the judge’s findings would have been if she had decided the case on the basis of correct legal principles”).

.Our application of Chapman harmless error analysis plays out differently when reviewing a jury verdict, because in that context, we do not know how the jury viewed the evidence, see United States v. Benally, 546 F.3d 1230, 1233 (10th Cir. 2008) (observing that ”[]]ury decision-making is designed to be a black box .,. [in which] the inner workings and deliberation of the jury are deliberately insulated from subsequent review"), abrogated by Pena-Rodriguez v. Colorado, — U.S. —, 137 S.Ct. 855, 197 L.Ed.2d 107 (2017) (recognizing "a [limited] constitutional exception to the no-impeachment rule for instances of racial bias” in jury deliberations), and we cannot return the case to the jury. Thus in jury trial cases, we affirm the conviction if we think "that the omitted element was uncontested and supported by. overwhelming evidence, such that the jury verdict would have been the same absent the error,” Neder, 527 U.S. at 17, 119 S.Ct. 1827. By contrast, in a bench trial, we often know the inferences the factfinder made and declined to make, see Clark (Rayshawn), 147 A.3d at 328 n.14 (explaining that bench trial “findings on the record” are subject to appellate review because, unlike ”secre[t] .,. jury deliberations," we know when "the trial court left a dispositive factual dispute unresolved” or resolved a specific issue in a manner inconsistent with the ultimate verdict), and remand is an accepted *330 course of action. See supra note 37; cf. Gay v. United States, 12 A.3d 643, 647 (D.C. 2011) ("Where a trial court's ‘findings of fact, conclusions of law and judgment, taken together,’ do not ‘present an integrated, internally consistent and readily understood whole/ remand is appropriate.”); accord Williams (Shirley), 90 A.3d at 1128 (citing Gay, 12 A.3d at 647); Ewell, 72 A.3d at 132 (same).