*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CM-1220

WAYNE D. ROBINSON, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-7497-18)

(Hon. Maurice Ross, Trial Judge)

(Submitted October 1, 2020                    Decided November 10, 2021)

*Stephen W. Riddell* was on the brief for appellant.

*Timothy J. Shea*, United States Attorney at the time the brief was filed, with whom *Elizabeth Trosman*, *John P. Mannarino*, *Eric S. Nguyen*, and *Daniel G. Randolph*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

EASTERLY, *Associate Judge*: Wayne Robinson[1] was convicted of attempted voyeurism[2] after he attempted to take a photograph under a woman's skirt while they were both riding an escalator in Union Station. The District's voyeurism statute, among other things, makes it unlawful "for a person to intentionally capture an image of a private area of an individual"—in pertinent part defined to include the "undergarment-clad genitals, pubic area, anus or buttocks"—"under circumstances in which the individual has a reasonable expectation of privacy, without the individual's express and informed consent." D.C. Code § 22-3531(a)(2), (d). Mr. Robinson asserts the evidence was legally insufficient to support his conviction because women have no expectation of privacy when they are in public spaces; rather, "[a] woman in a public place assumes the risk that other members of the public may view her from almost any angle or from any vantage point." This proposition is as absurd as it is offensive, and we clarify in this opinion that it has no foundation in the District's voyeurism statute.

Certainly some provisions of our voyeurism statute are concerned with expectations of privacy in private locations such as bathrooms and changing rooms.

---

[1] There is some indication in the record that Mr. Robinson's "true" surname is actually "Robertson"; but because he uses the surname "Robinson" in his notice of appeal and brief to this court, we do the same.

[2] *See* D.C. Code §§ 22-3531(d), 22-1803 (2021 Supp.).

*See* D.C. Code § 22-3531(b)(1), (b)(2), (c)(1)(A), (c)(1)(B). But § 22-3531(d), regarding "captur[ing] an image of a private area of an individual," grounds expectations of privacy in "circumstances." When individuals don clothing, cover statutorily protected private areas of their bodies, and enter into public spaces, they choose how much of themselves to show the world and thus create a circumstance in which they have a reasonable expectation of privacy in those covered private areas. Absent "express and informed consent," a person who captures an image of those statutorily protected and clothed private areas commits a crime under D.C. Code § 22-3531(a)(2) and (d).

## I. Facts and Procedural History

For purposes of this appeal, the following facts are undisputed. One May morning, the complainant walked over to Union Station to get a cup of coffee. At some point, Mr. Robinson, a stranger, started to follow her. Video footage captured him trailing her for some distance in the food court, and then, as described by the trial court, standing "directly behind her on the elevator going up" to the main level of the building. As they rode the escalator, he "crouched forward, extended his hand towards the bottom of [her] skirt, and smoothly pulled his hand back after a few moments." The complainant "both felt [Mr. Robinson's] phone against her knee and

saw it angled so he could take a photograph up her skirt." She confronted Mr. Robinson, accused him of taking a photograph under her skirt, and alerted some nearby Amtrak police officers of the incident. Although Mr. Robinson told the police that he had taken the photograph by accident, "he . . . [also] admit[ted to them] that he takes pictures of other women to make his girlfriend jealous." With Mr. Robinson's consent, the police searched his phone and recovered a photo showing complainant's legs.[3]

In connection with this conduct, the government charged Mr. Robinson with attempted voyeurism. At his bench trial, the government presented testimony from the complainant and the Amtrak sergeant who searched Mr. Robinson's phone, as well as video footage of Mr. Robinson and the photograph recovered from his phone. Mr. Robinson testified in his own defense. The trial court did not credit Mr. Robinson's testimony that he accidentally photographed the complainant, and concluded that the government had proved Mr. Robinson's guilt. This timely appeal followed.

---

[3] The photograph looks down towards complainant's feet, not up her skirt; the government argued that Mr. Robinson had mistakenly taken the photo in the wrong direction.

## II. Analysis

Although Mr. Robinson now concedes he tried to "upskirt" the complainant, i.e., take a picture of a private area within the meaning of the District's voyeurism statute under the hem of her skirt or dress, he argues that the evidence supporting his attempted voyeurism conviction is nevertheless legally insufficient because the government failed to prove an essential actus reus element of the crime,[4] specifically that he attempted to upskirt the complainant "under circumstances in which [she had] a reasonable expectation of privacy."  D.C. Code § 22-3531(d) (making it "unlawful for a person to intentionally capture an image of a private area of an individual,[5] under circumstances in which the individual has a reasonable expectation of privacy, without the individual's express and informed consent").  Mr. Robinson asserts that the meaning of this phrase is a question of first impression, and that we must interpret it to exclude photographing women in public places.

---

[4] *See Carrell v. United States*, 165 A.3d 314, 320 n. 13 (D.C. 2017) (adopting the Model Penal Code classifications for actus reus elements:  conduct, circumstances, and results).

[5] D.C. Code § 22-3531(a)(2) (defining "private areas" as "the naked or undergarment-clad genitals, pubic area, anus, or buttocks, or female breast below the top of the areola").

We review sufficiency of the evidence and embedded statutory interpretation issues de novo. *In re K.G.*, 178 A.3d 1213, 1219 (D.C. 2018); *see also Carrell*, 165 A.3d at 326. Considering the facts in the light most favorable to the verdict, we must deem the evidence sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Miller v. United States*, 209 A.3d 75, 77 (D.C. 2019) (internal quotation marks and italics omitted). We conclude that Mr. Robinson's argument is foreclosed by the plain language of the voyeurism statute. *See Lopez-Ramirez v. United States*, 171 A.3d 169, 172 (D.C. 2017) (acknowledging the judicial aim is "to ascertain and give effect to the legislative intent" as reflected in a statute's text (internal quotation marks omitted)).

Mr. Robinson's analysis focuses entirely on the expectations that people have (or do not have) "in public": he argues that if a woman is in a public space, like Union Station, she has no expectation of privacy in any part of her body, whether clothed or not. In support of this argument, he cites cases from other jurisdictions interpreting (defunct[6]) voyeurism statutes phrased in locational terms. *See, e.g., C'Debaca v. Commonwealth*, No. 2754-97-4, 1999 WL 1129851 (Va. Ct. App. Feb. 2, 1999), *State v. Gilliland*, No. M2008-02767-CCA-R3-CD, 2010 WL 2432014 (Tenn. Crim. App. June 17, 2010), and *State v. Glas*, 54 P.3d 147 (Wash. 2002).

---

[6] *See infra* notes 7 and 8.

But, unlike these statutes,[7] D.C. Code § 22-3531(d) does not look to physical location to define expectations of privacy; instead it more broadly refers to "circumstances in which the individual has a reasonable expectation of privacy." Conventional and legal dictionaries alike agree that 'circumstance' is not merely a synonym for 'place,' but an "event," "fact" or "condition" that accompanies another. *See Circumstance*, *Black's Law Dictionary* (11th ed. 2019); *see also Circumstance*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/circumstance (last visited Sep. 1, 2021); https://perma.cc/9H3M-5SN6; *cf. Glas*, 54 P.3d at 151–52 (contrasting Washington state's statute "which named the *place* where this privacy is expected" with California's statute which referred to "*circumstances* in which the other person has a reasonable expectation of privacy,"

---

[7] *See* Va. Code Ann. § 18.2-386.1 (West 1994) ("It shall be unlawful for any person to videotape, photograph, or film any nonconsenting person if (i) that person is totally nude, clad in undergarments, or in a state of undress so as to expose the genitals, pubic area, buttocks or female breast *in a restroom, dressing room, locker room, hotel room, motel room, tanning bed, tanning booth, bedroom or other location . . . .*" (emphasis added)); *see also* Tenn. Code Ann. § 39-13-605 (West 2000) ("It is an offense for a person to knowingly photograph . . . an individual, when the individual is in a place where there is a reasonable expectation of privacy . . ."); Wash. Rev. Code Ann. § 9A.44.115 (West 1998) ("A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire . . . he or she knowingly [and without consent] views, photographs, or films another person . . . while the person being viewed . . . is in a place where he or she would have a reasonable expectation of privacy).

and then "[left] the option open to" enforce the statute in "public places" (emphasis added)).[8]

Recognizing that D.C. Code § 22-3531 protects individuals based on their "circumstances"—which may include but are not limited to location—we are compelled to conclude that an individual in public, such as the complainant in this case, has a reasonable expectation of privacy in those statutorily defined "private areas" which she has clothed. Put another way, when an individual in public covers an enumerated "private" area of their body, they create a circumstance in which they have a reasonable expectation of privacy in that area. We are unpersuaded by Mr. Robinson's argument that "given the omnipresence of cell phones with photographic capabilities," women are on notice that they might be upskirted and thus cannot reasonably have an expectation of privacy in any part of their body. The unpleasant

---

[8] In the wake of *Glas*, the Washington State legislature amended its voyeurism statute to incorporate the "circumstances" language used in the California and D.C. voyeurism statutes. *See* Wash. Rev. Code Ann. § 9A.44.115 (West 2003); *Id.* (West 2017). Virginia also amended its statute to make it a crime to take a "videographic or still image . . . by placing the lens or image-gathering component of the recording device in a position directly beneath or between a person's legs for the purpose of capturing an image of the person's intimate parts or undergarments." Va. Code Ann. § 18.2-386.1 (West 2005). *See also* Tenn. Code Ann. § 39-13-605 (West 2011); *id.* (West 2018); *id.* (West 2021) (the current statute prohibiting the taking of photos that "focus[ ] on the intimate area of the individual and would be considered offensive or embarrassing by the individual").

fact that upskirting might occur does not diminish an individual's reasonable expectation that it should not. *See State v. Boyd*, 155 P.3d 188, 193 (Wash. Ct. App. 2007) ("[when a person] dons a skirt . . . [and] climbs a flight of stairs, she may reasonably expect that people standing beneath her may incidentally glimpse parts of her body above the hemline . . . [but] she does not [therefore] implicitly authorize others to attempt to view the hidden parts of her body").

### III. Conclusion

For the reasons set forth above, we conclude that the evidence that Mr. Robinson violated D.C. Code § 22-3531(a)(1) and (d) was legally sufficient. Accordingly, we affirm.

*So ordered.*